# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **A.R.-1, A.R.-2, and E.R.**

**No. 22-0092** (Lewis County 21-JA-46, 21-JA-47, and 21-JA-48)

## MEMORANDUM DECISION

Petitioner Mother L.G., by counsel Jamella Lockwood, appeals the Circuit Court of Lewis County's January 12, 2022, order terminating her parental rights to A.R.-1, A.R.-2, and E.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Brian W. Bailey, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for an improvement period and in terminating her parental rights instead of employing a less restrictive alternative disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2021, the DHHR filed a child abuse and neglect petition against the father based upon domestic violence. Specifically, the DHHR alleged that petitioner and the father had recently separated and that, during Easter festivities held at the father's parents' house, the father jumped on the hood of a car in which petitioner and the three children were seated. The father had a large knife and began trying to stab petitioner through the windshield of the car. Petitioner began driving the car and the father continued to try to stab her through the windshield and driver's window until she rounded a curve in the road, causing the father to fall off. The father fled into the woods with

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as A.R.-1 and A.R.-2, respectively, throughout this memorandum decision.

the knife but was later arrested and charged with child abuse creating risk of injury. A Child Protective Services ("CPS") worker spoke to petitioner, who described the incident and further reported that the father's behavior had been extremely erratic in the weeks leading up to the incident. Petitioner was considered a nonabusing parent at that time.

At an adjudicatory hearing held in June of 2021, the father stipulated to abusing and neglecting the children, and the circuit court accepted the father's stipulation and adjudicated him as an abusing parent. The DHHR filed an amended petition against petitioner at that time, alleging that she failed to protect the children from the father, that she engaged in a pattern of behavior designed to protect the father at the expense of the safety of the children, and that she and the father had a prior CPS history that had previously resulted in the removal of the children based upon domestic violence between petitioner and the father. However, the DHHR allowed the children to remain in petitioner's care at that time.

The circuit court held an adjudicatory hearing on the amended petition in October of 2021. The DHHR called petitioner to testify and questioned her regarding her prior history of domestic violence with the father. Petitioner admitted that her children had previously been involved in proceedings in the State of Pennsylvania in 2018 or 2019, but claimed that she had never lived there. She admitted, however, that she participated in counseling in those proceedings. Petitioner testified that the incident "was so long ago" and that she could not remember what occurred or whether the father was criminally charged, repeatedly stating that she needed time to "go over the records." Petitioner also acknowledged that she was involved in a prior abuse and neglect proceeding in Lewis County, West Virginia in 2013 based upon allegations of domestic violence. Petitioner denied that she remembered what occurred to initiate those proceedings, again saying "[t]hat was so long ago."

The DHHR also questioned petitioner regarding the incident wherein the father attempted to stab her through the windshield and window of her car. Petitioner testified that she could not remember what occurred and that she had "been working with my counselor" to remember the event. Petitioner stated that although she heard the father yelling, she "did not physically see him there." Petitioner claimed it was a traumatic experience and that she could not remember anyone stabbing her car (although she could describe the damage to the windshield after the incident) and refused to name the father as the person on the hood of her car. Petitioner stated that she needed a continuance and time to work with her counselor so that "[i]n due time" she could remember the incident. The DHHR further questioned petitioner about phone calls between she and the father that were recorded due to his incarceration. The DHHR specifically asked petitioner why she had apologized to the father, and she replied "[b]ecause I should never have went down" to the father's parents' house. During this questioning, petitioner became extremely agitated and essentially refused to directly answer any questions, leading the circuit court to instruct the DHHR to call its next witness because they were "not getting anywhere here right now."

The father's sister, R.R., testified that she observed several instances of domestic violence between petitioner and the father, including an instance in approximately March of 2021, when she received an unintentional phone call from petitioner wherein she could hear petitioner yelling at the father to "stop." R.R. stated that petitioner sounded scared during the incident. Later, petitioner told R.R. that she moved herself and the children into a hotel to protect them from the

father. R.R. also described the incident leading to the instant petition's filing and stated that she observed the father jump on the hood of petitioner's car and attempt to stab her. R.R. stated that she and another relative called 9-1-1 and noted that petitioner did not want to give a statement to the police because she wanted the father to get help. The father's brother, C.R., also testified and corroborated R.R.'s testimony.

A police officer testified that he responded to the scene after the father attempted to stab petitioner through the windshield and the open side window of the car. The officer testified that petitioner refused to provide a statement at that time. The officer spoke to petitioner on a later date and tried to take a statement, but petitioner advised that she did not know who was on the hood of her car and was not sure who was yelling at her. The officer stated that petitioner never provided a statement of what occurred that day. Following this testimony, the circuit court continued the hearing.

The circuit court reconvened the adjudicatory hearing later in October of 2021. The DHHR introduced recordings of the 9-1-1 calls made regarding the incident, as well as a recording of a phone call between petitioner and the father. Petitioner testified regarding the calls and stated, "I know I was supposed to come in here and say that it was [the father]. To me, I can't fully do that because he never acted like that before." Petitioner admitted that she continued to talk to the father until September of 2021 so that he would have support to address his issues. Petitioner denied that she had done anything wrong and stated that she had left the father prior to the stabbing incident to protect her children.

Ultimately, the circuit court found that the father jumped on petitioner's vehicle while she and the children were inside and began stabbing her windshield and an open side window. The circuit court found that there was "a credibility issue" with petitioner's testimony, that she could not remember who jumped on her car or what happened, especially given the recording of petitioner's phone call with the father wherein she referenced the incident and her windshield. The circuit court found that petitioner was trying to protect the father, did not want to disclose what the father had done, and, based on the phone call between petitioner and the father, petitioner planned to manipulate C.R. into changing his testimony. The circuit court further found that the evidence demonstrated that petitioner spoke to the father 219 times after his arrest and that she paid approximately $400 in expenses related to those calls. The circuit court considered the prior cases against petitioner and found that "this has been a pattern that's been going on" and that petitioner "fail[ed] to protect the children from incidents of domestic violence." Accordingly, the circuit court adjudicated petitioner as an abusing parent.

In December of 2021, the circuit court held a dispositional hearing. The DHHR presented the testimony of a CPS worker, who testified that she had contacted petitioner when the amended petition was filed and advised her that neither she nor the children were to have contact with the father, but that petitioner continued contact with the father and claimed that "she just wanted to help" the father. The CPS worker further testified that petitioner failed to acknowledge the incident leading to the petition's filing and "went around the subject a lot." The worker opined that petitioner should not be granted an improvement period as she failed to acknowledge her issues with domestic violence and continued to have contact with the father.

3

Petitioner testified that she had last talked with the father the day prior to the dispositional hearing, claiming that the circuit court previously told her that she could talk to him if she wanted. Petitioner was again questioned about what occurred during her prior abuse and neglect proceedings and she either denied remembering what happened or claimed that the "paperwork" was incorrect, stating "[s]o, I'm not going to sit up here and answer questions about it." On cross-examination, petitioner requested an improvement period and testified that she would comply with services. Petitioner stated that she was participating in counseling and supervised visits with the children. However, petitioner continued to be evasive in answering questions regarding the stabbing accident and refused to name the father as the perpetrator of domestic violence against her and the children.

A second CPS worker testified that she had contact with petitioner several times during the proceedings and that petitioner never acknowledged the domestic violence issues leading to the petition's filing. Given petitioner's refusal to acknowledge the issues of abuse and neglect, the CPS worker opined that there were no services that could be offered and recommended that petitioner's parental rights be terminated.

By order entered on January 12, 2022, the circuit court denied petitioner's request for a post-adjudicatory improvement period and terminated her parental rights. The circuit court found that there had been two prior cases involving petitioner and the father, at least one of which was based upon domestic violence. The circuit court also made findings regarding the stabbing incident leading to the petition's filing. The circuit court found that the 9-1-1 call established that petitioner did not want law enforcement to be contacted after the incident, that petitioner refused to give a statement on the incident, that petitioner continually refused to state what occurred during that incident, and that she attempted to manipulate C.R.'s testimony, all of which were attempts to protect the father. Indeed, as of the dispositional hearing, petitioner refused to acknowledge the event leading to the petition's filing and refused to answer questions about the same. The circuit court further found that petitioner and the father continued to be in a relationship and maintain contact and that she was evasive when questioned whether she would end her relationship with the father if granted an improvement period. Given the foregoing, the circuit court concluded that petitioner "does not acknowledge the severity of the domestic violence that occurred in the presence of the children on April 4, 2021, and she does not acknowledge that [the father] could have seriously hurt and/or killed her and the children." As such, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. Petitioner appeals the circuit court's January 12, 2022, dispositional order terminating her parental rights.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

---

[2]The father's parental rights were also terminated during the proceedings below. The children were placed with an aunt and uncle, and the permanency plan for the children is adoption in that home.

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner raises two assignments of error pertaining to the termination of her parental rights. She first argues that the circuit court erred in terminating her parental rights without granting her an improvement period. Petitioner avers that she filed a motion and demonstrated that she was likely to fully participate in an improvement period. Specifically, petitioner states that she testified that she was participating in visits with the children and sought out counseling "to learn about domestic violence and how it affects herself and her children." Petitioner also states that she "recognized" the issues of domestic violence and the need to protect her children from the father. Petitioner contends that it was undisputed that she was willing to participate in services and remediate the circumstances of abuse and that, as such, she should have been granted an improvement period.

Second, petitioner argues that the circuit court erred in terminating her parental rights rather than employing a less restrictive alternative disposition, such as disposition pursuant to West Virginia Code § 49-4-604(c)(5).[3] Petitioner argues that the welfare of the children would not be seriously threatened if a less restrictive disposition were implemented in this case. According to petitioner, she was the victim of domestic violence and was never accused of physically harming her children. Petitioner states that she was engaged in services and expressed a desire to participate in further services. By employing a less restrictive disposition, petitioner would be able to work on her issues with domestic violence and improve her protective parental capabilities.

We find that petitioner's arguments are without merit. We first note that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant

---

[3]West Virginia Code § 49-4-604(c)(5) provides as follows:

Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

an improvement period within the applicable statutory requirements[.]"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Here, petitioner failed to demonstrate that she was likely to fully participate in an improvement period. While petitioner testified that she would comply with an improvement period and was participating in visitation and counseling, her continued refusal to acknowledge the conditions of abuse and neglect created a barrier to her ability to meaningfully participate in an improvement period. Throughout the proceedings below, petitioner claimed that she could not remember the event that led to the petition's filing. Petitioner refused to name the father as the individual who jumped on the hood of her car and attacked her with a knife, attempting to stab her in the children's presence. Further, petitioner claimed that she could not remember the bases for the two prior child abuse and neglect petitions against her, was evasive during questioning, and at times, flatly refused to answer any questions. Importantly, this Court has held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given petitioner's refusal to acknowledge the conditions of abuse and neglect, an improvement period would have been an exercise in futility at the children's expense and, as such, we find no error in the circuit court's decision to deny her an improvement period.

We likewise find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse and neglect on her own or with help. As noted above, petitioner participated in counseling and visitation with the children but ultimately refused to acknowledge the abuse and neglect, demonstrating a complete lack of protective capabilities towards the children. Despite the fact that the father tried to repeatedly stab petitioner through the windshield and open window of her vehicle while the children were present, she refused to identify him as the perpetrator of the abuse throughout the proceedings and against the great weight of the evidence. Indeed, the father admitted to attempting to stab petitioner in the children's presence and the father's two adult

6

siblings testified to observing the same, yet petitioner repeatedly refused to admit that he was the perpetrator of the abuse. The circuit court found that petitioner's refusal to identify the father and her refusal to testify to the issues of domestic violence demonstrated that petitioner chose to protect the father at the expense of the children's safety.

While petitioner argues that she should have been granted a less restrictive disposition, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4 (citation omitted). Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's failure to acknowledge the conditions of abuse, we find that the circuit court did not err in terminating her parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 12, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: August 31, 2022


**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn